**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Pamela Docken,**

**Plaintiff,**

**v.**

**David Drucker and the State of Minnesota,**

**Defendants.**

**Civil No. 01-1106 (MJD/SRN)**

**REPORT AND RECOMMENDATION**

---

Ruth Y. Ostrom, Esq. and Mark A. Greenman, Esq., on behalf of Plaintiff.

Yvonne Shorts, Esq., Assistant Attorney General on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on May 7, 2002, on Plaintiff's Motion for Summary Judgment on Count I of her Complaint (Doc. No. 11) and on Defendants' Motion for Partial Summary Judgment Dismissing Plaintiff's Constructive Discharge and Negligent Infliction of Emotional Distress Claims (Doc. No. 20). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, this Court recommends that Plaintiff's motion be denied, and Defendants' motion be denied with respect to constructive discharge, and granted with respect to negligent infliction of emotional distress.

## I. FACTUAL BACKGROUND

In the present case, Plaintiff has brought claims for: (1) violation of the Family and

AUG 1 3 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Medical Leave Act (FMLA), 29 U.S.C. § 2611 et seq.; and (2) negligent infliction of emotional distress. (Complaint.) The facts leading to the Complaint occurred as follows:

In July 1999, Plaintiff was employed at the Department of Public Safety (the Department), as an Office and Administrative Specialist. (Affidavit of Yvonne Shorts (Shorts Aff.); Ex. BB Deposition of Pamela Docken (Docken Depo.) at 19.) During the preceding year, Plaintiff worked as a grants specialist for the Department. Id. at 15. That position ended in June 1999. Id.

At some point in June 1999, the Department approved Plaintiff's request for vacation time from July 1 through July 11, 1999. Id. at 20 & 56. On June 14, 1999, Plaintiff wrote a letter to the State, stating "I would like to thank you for approving the vacation time from 7/1/99 -7/11/99. I will be traveling to Nebraska during that time to be with my father. He is beginning the recovery process of a severe stroke that he suffered over Memorial Day weekend." (Affidavit of Mark Greenman (Greenman Aff.); Ex. A.) Between June 23 and June 28, 1999, Plaintiff communicated to Marie Bibus, who was then the Executive Director of the Crime Victim Services Center where Plaintiff had previously worked. (Affidavit of Marie Bibus, (Bibus Aff.) at ¶ 5.) Plaintiff informed Bibus that it was possible she would take FMLA leave to care for her father in Nebraska. Id. In her deposition, Plaintiff stated that she decided to request FMLA leave during the last weekend of June 1999, after visiting her father in Arizona. (Docken Depo. at 45-46.) On June 28, 1999, Plaintiff sent an email to Bibus stating "I am going to begin the paperwork for FMLA in the event I have to stay in Nebraska for an extended time to care for him if he continues to live - he needs care." (Greenman Aff.; Ex. D.) Bibus informed Plaintiff that the personnel office could provide the necessary FMLA forms. Id. In response, Plaintiff emailed

Leslie Brezinski in the human resources office, stating "My father had a stroke a few weeks ago. He is not doing well and needs care. What do I need to do for FMLA? I will have to go to Nebraska to care for him." (Greenman Aff.; Ex. E.)

On June 30, 1999, Plaintiff submitted a Leave of Absence Request Form to the Department, requesting leave from July 1 through September 15, 1999. (Greenman Aff.; Ex. F.) Plaintiff requested the leave in order to care for her father who had suffered a stroke during the Memorial Day weekend. (Docken Depo. at 29, 55-57.) On or after July 1, 1999, David Drucker, the Department's Labor Relations Manager, received a letter that Plaintiff had submitted from her physician, Dr. Michael Clifford. (Affidavit of David Drucker (Drucker Aff.) at ¶ 5.) The letter stated the following:

> Ms. Pam Docken has informed me that her father is ill and living in Arizona. Apparently he has suffered a recent stroke and does require her assistance in being brought back either to Nebraska or Minnesota to live. He is living in a situation in Arizona that is not conducive to good monitoring of his medical care. Ms. Docken would be required to leave her work for a period of time in order to expedite bringing him back to Minnesota. As soon as this can be arranged through her work situation, she would like to travel down there and transport her father back to either location. If you have any further questions, please feel free to contact me.

(Greenman Aff.; Ex. H.)

June 30, 1999 was Plaintiff's final work day at the Department. (Bibus Aff. ¶ 7.) Plaintiff planned to drive to Nebraska the evening of July 1, 1999, but ended up leaving the morning of July 2. (Docken Depo. at 21.) She intended to use her vacation time to determine whether her father's Nebraska house would be sufficient for his medical care needs, were he transported there from Arizona. Id. at 20-21 & 29-30.

Drucker determined that Clifford's letter did not provide adequate medical documentation

for Plaintiff's Family Leave request. (Drucker Depo. at 19-20.) On July 2, 1999, Drucker left a voicemail message at Plaintiff's home stating Clifford's letter did not meet FMLA requirements. (Drucker Aff. ¶ 6.) He stated that the Department required a letter from her father's doctor, and the leave would not qualify as FMLA leave until he received proper medical certification. Id. Drucker also stated that Plaintiff could not use FMLA leave to attend school.[1] Id. Drucker also informed Plaintiff that if she did not return after 12 days, she would be "AWOL from the state." (Docken Depo. at 66.) At that time, Drucker believed Plaintiff had already left Minnesota. (Drucker Aff. ¶ 6.)

Also on July 2, 1999, Plaintiff faxed a letter of resignation to the Department. (Docken Depo. at 69.) The letter included the following statements:

> Under absolute distress I give you my resignation, effective July 12, 1999 - I already have approved leave until that time. Thanks to you and others I feel I am against the wall with no options. I have been going through a very emotional experience with my dad and am distraught. I simply can not handle the pressure of trying to get the medical care my father needs when I am being pelted by certain individuals with insensitive comments that I may not really be caring for him. This is my only surviving parent and I do feel the need to take care of him. When I went to Arizona last weekend I discovered he was not receiving medical treatment - that he was in a small travel trailer in my brother's yard. That is why I am bringing him home. For proper medical treatment.
>
> The letter that was sent to you from Dr. Clifford explains that I am bringing my dad to Minnesota for treatment. Once here he will be evaluated and treatment provided. Unfortunately you didn't seem to understand that I would have a more thorough letter at that time.

(Greenman Aff.; Ex. K.)

---

[1]Plaintiff explains in her memorandum that shortly before learning that her father was not receiving proper medical care, she requested and was denied an educational leave of absence.

At some point after July 2, 1999, while in Nebraska, Plaintiff obtained a note from her father's treating physician, Dr. Huber Sandoval Garcia, indicating that her father had suffered a stroke. (Docken Depo. at 85-88.) Plaintiff did not provide the Department with this note prior to commencing the present case. Id.

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party shows that there are no material issues of fact in dispute, the burden shifts to the nonmoving party to set forth facts showing that there is a genuine issue for trial." Donovan v. Harrah's Maryland Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002) citing Celotex, 477 U.S. at 323. "In opposing a motion for summary judgment, the nonmovant must make a showing that, if reduced to admissible evidence, would be sufficient to carry the nonmovant's burden of proof at trial." Celotex, 477 U.S. at 323

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits

> a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

Celotex, 477 U.S. at 324.

> [T]he Court understands *Celotex* to require information presented in opposition to summary judgment to be substantively admissible, even if the actual form of the information is not. This view is in accord with several other Circuit Courts of Appeals. *See Thomas v. International Business Machines*, 48 F.3d 478, 485 (10th Cir.1995) ("To be sure, the nonmoving party need not produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible.") (citing *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir.1994); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990) (stating that hearsay testimony that would be inadmissible at trial, may not be included in an affidavit to defeat summary judgment).

International Ship Repair & Marine Services, Inc. v. St. Paul Fire & Marine Ins. Co., 906 F. Supp. 645, 649 (M.D. Fla. 1995).

**B. The FMLA.**

The present case concerns the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601, et seq. Under the FMLA, "an eligible employee shall be entitled to a total of twelve workweeks of leave during any 12-month period for one or more of the following: . . . (C) In order to care for the . . . parent, of the employee, if such . . . parent has a serious health condition." 29 U.S.C. § 2612(a)(1). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition" involving: (1) inpatient care; or (2) continuing treatment by a health care provider. 29 C.F.R. § 825.114(a). An employee is "needed to care for" a parent if, for example, the parent is "unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the

doctor." The term also applies to an employee who "provides psychological comfort and reassurance which would be beneficial to a . . . Parent who is receiving inpatient care." 29 C.F.R. § 825.116(a). The term can also be applied to an employee who is needed "to make arrangements for changes in care, such as transfer to a nursing home." 29 C.F.R. § 825.116(b).

Under the FMLA, an employer may require that an employee provide certification of the serious health condition as follows:

> (a) In general
>
> An employer may require that a request for leave under subparagraph (C) or (D) of section 2612(a)(1) of this title be supported by a certification issued by the health care provider of the eligible employee or of the . . .parent of the employee, as appropriate. The employee shall provide, in a timely manner, a copy of such certification to the employer.
>
> (b) Sufficient certification
>
> Certification provided under subsection (a) of this section shall be sufficient if it states–
>
>> (1) the date on which the serious health condition commenced
>>
>> (2) the probable duration of the condition
>>
>> (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition;
>>
>> (4)(A) for purposes of leave under section 2612(a)(1)(C) of this title, a statement that the eligible employee is needed to care for the . . . parent.

29 U.S.C. § 2613.

> (b) When the need for leave is not foreseeable, or in the case of recertification, an employee must provide certification (or recertification) within the time frame requested by the employer (which must allow at least 15 days after the employer's request) or

> as soon as reasonably possible under the particular facts and circumstances. In the case of a medical emergency, it may not be practicable for an employee to provide the required certification within 15 calendar days. If an employee fails to provide a medical certification within a reasonable time under the pertinent circumstances, the employer may delay the employee's continuation of FMLA leave. If the employee never produces the certification, the leave is not FMLA leave.

29 C.F.R. § 825.311.

After the period of qualified leave, an employee is entitled to her former position or an "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a). The FMLA declares it unlawful to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in the statute. 29 U.S.C. § 2615(a)(1). The FMLA provides for enforcement, by allowing an employee to bring a civil action against an employer who violates section 2615. 29 U.S.C. § 2617.

**Summary Judgment under the FMLA.**

> To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B).

Ragsdale v. Wolverine World Wide, Inc., 122 S.Ct.1155, 1161 (2002). "To state a claim under the FMLA, a plaintiff must prove three elements at trial: (1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment decision; and (3) there is a causal connection between the protected activity and the adverse employment decision." Parris v. Miami Hearald Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000). "To qualify as an 'adverse

employment action,' an employer's action must have a materially adverse impact on the employee's terms and conditions of employment." Tremblay v. Liberty Enterprises, Inc., 2001 WL 1575157 (D. Minn. 2001) citing Ledergerber v. Stangler, 122 F .3d 1142, 1144 (8th Cir.1997).

**C. The Parties' Positions.**

Plaintiff states that she has made out a § 2615(a)(1) claim, and is entitled to summary judgment. She explains that her father clearly had a "serious health condition," as required by the FMLA. Further, she requested FMLA leave as soon as possible after realizing it was necessary. Hence, Plaintiff states she requested leave for a proper purpose, and was entitled to FMLA protection.

Plaintiff contends that Drucker failed to follow FMLA notice and certification procedures. She cites 29 C.F.R. § 825.301(b)(1)(ii)'s requirement that an employer provide written notice of "any requirements for the employee to furnish medical certification of a serious health condition and the consequences of failing to do so." Because Drucker did not provide her with this notice, Plaintiff explains that "the State failed to give Docken the requisite notice which, in turn, forced her to resign her employment and forfeit her FMLA protections."

Plaintiff argues that because Defendants failed to comply with their own FMLA notification requirements, they can not now blame her for failing to provide required medical certification. Moreover, because this was a case of a "serious health condition," Plaintiff explains that under 29 C.F.R. § 825.305(b), she had at least 15 days in which to provide medical certification. Defendants, however, failed to provide to her in writing her rights and obligations under the FMLA.

Plaintiff explains that she is entitled to summary judgment on liability, because Defendants violated the FMLA. She emphasizes that the FMLA regulations state, "[a]ny violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided under the Act." 29 C.F.R. § 825.220(b). Thus, Defendants' failure to follow certification requirements constitutes a violation of the FMLA. Plaintiff concludes that Defendants' violation of the FMLA prejudiced her by forcing her to forfeit her own rights under the FMLA, and to resign. Therefore, she is entitled to summary judgment.

Defendants respond that summary judgment is not appropriate in the present case. They state that Plaintiff was not forced to forfeit any of her rights under the FMLA. Defendants argue that they did inform Plaintiff of the deficiencies in her initial certification, and gave her a reasonable opportunity to provide appropriate certification. They note that Plaintiff's initial letter lacked three of the four requirements provided in 26 U.S.C. § 2613(b). Consequently, Drucker could not accept it as medical certification for the leave request. At the time of the request, Defendants argue, the Department had no satisfactory certification establishing that Plaintiff's father suffered from a "serious health condition." Therefore, Defendants argue that it was proper for Drucker to inform Plaintiff that she needed to submit additional certification in order to qualify for FMLA leave.

Defendants also stress that Drucker immediately notified Plaintiff of the certification deficiencies. Defendants concede that Drucker did not set a deadline or otherwise inform Plaintiff of when she needed to provide the certification. But they point out that he reminded Plaintiff that she was on vacation through July 11, 1999. Therefore, "even if Plaintiff did not understand that she had 15 days in which to submit appropriate certification she knew that she

had at least nine additional days of vacation to procure the certification if she required leave beyond her vacation." Defendants add that Plaintiff apparently would have been able to provide the certification they received, because shortly after resigning, Plaintiff received a note from Garcia, her father's treating physician.

Apart from her interaction with Drucker, Defendants also argue that Plaintiff already had notice of her rights under the FMLA. They explain that the Department had several postings in various divisions advising employees of their rights under the FMLA. Moreover, "the State of Minnesota AFSCME Collective Bargaining Agreement, which sets forth the terms of Plaintiff's employment as a member of AFSCME, advises employees of their rights and obligations under the FMLA." Defendants also observe that Plaintiff was an expeditor within her division, and attended an Expeditor Training session on January 14, 1998, which covered the Department's FMLA policy, including a review of employees' rights. Therefore, they state that Plaintiff must have been familiar with the policy.

Defendants also assert that Plaintiff has not established that she cared for her father. They argue that during the time in question, Plaintiff did not visit, transport, or care for her father. Defendants argue that, at the very least, a genuine issue of material fact exists as to whether Plaintiff actually visited Nebraska for the purpose of looking at medical facilities for her father.

Finally, Defendants emphasize that they never took any adverse action against Plaintiff. Plaintiff was never told she was fired, or that her leave was denied. With respect to certification, Drucker did not tell Plaintiff that she could not take leave beyond her vacation. He merely informed her that the it would not qualify as FMLA leave without further medical certification. Instead, it was Plaintiff's abrupt resignation, according to Defendants, that interfered with her

receiving FMLA leave. Because she resigned so suddenly, the Department was never able to further inquire into the FMLA request. In addition, had Plaintiff simply obtained the letter from her father's doctor prior to resigning, she could have supplied the required certification.

B. **The Court's Recommendation.**

The Court recommends denying Plaintiff's motion for summary judgment. There exist genuine issues of material fact concerning whether Plaintiff was denied a right under the FMLA, and also whether she suffered an adverse employment decision. In the present case, Defendants did not deny Plaintiff's leave request, and took no disciplinary measures against her. Instead, Plaintiff resigned immediately after receiving Drucker's request for further medical certification. These facts render the present case distinguishable from each of the cases Plaintiff relies on for her motion.

There are also genuine issues of material fact concerning Defendants' compliance with the FMLA's notice requirements. Plaintiff argues that Drucker failed to provide adequate notice of her rights and obligations under the FMLA, and this failure absolved her of any obligation to provide further medical certification. From this argument, she concludes that Defendants violated the FMLA and that she is entitled to summary judgment on the matter of liability. But the cases Plaintiff cites do not indicate that summary judgment is appropriate in the present case for more than one reason. In all of these cases, the plaintiffs suffered a clear adverse employment decision, such as dismissal or suspension, while in the present case, she did not. The holdings also do not indicate that she is automatically absolved of her medical certification requirements, let alone that she is entitled to judgment as a matter of law. Finally, all of these cases involved courts finding that defendants were not entitled to summary judgment. But none of the courts

held that the plaintiffs were entitled to summary judgment.

**1. Issues of Fact.**

To support her motion, Plaintiff quotes the following statement in Miller v. At&T Corp., 250 F.3d 820, 835-36 (4th Cir. 2001):

> Both of these assertions attempt to take Miller to task for failing to provide information that AT&T did not request, and accordingly we reject them. First, by its terms the FMLA-2 only required Dr. Sommerville to check the appropriate category under item 3, which he undisputably did. AT&T nevertheless maintains that because Dr. Sommerville did not specify, in response to item 4, that he had treated Miller two or more times, the certification was inadequate on its face. However, Dr. Sommerville was not required to provide an answer to item 4 because that item specified that it was to be completed "only for a 'serious health condition' of an employee's spouse, child, or parent." J.A. 345 (emphasis omitted). Any failure by Dr. Sommerville to provide information under item 4 is not an appropriate basis for the denial of Miller's request for FMLA leave. Similarly, nothing on the FMLA-2 required Miller to submit supporting documentation for her leave request. Under these circumstances, to deny a leave request on the basis that supporting documentation was not submitted would be unconscionable. Moreover, to the extent it viewed Miller's certification as incomplete, AT&T was required to provide Miller a reasonable opportunity to cure any deficiency.

In the present case, Defendants were entitled to request further medical certification of Plaintiff's father's "serious health condition." And Drucker informed Plaintiff of exactly what was required, namely a letter from her father's doctor. Therefore, the present facts are unlike those which caused the court concern in Miller. In addition, there is a fact question concerning whether Defendants provided Plaintiff with "a reasonable opportunity to cure any deficiency" in her request. This question is particularly difficult to answer because of her quick resignation. Therefore Miller does not indicate that summary judgment for Plaintiff is appropriate.

The clearest shortcoming in Drucker's notice was his failure to inform Plaintiff that she

had at least 15 days to provide adequate certification. But even when combining that omission with other failures, which are not present in this case, courts have still concluded that the issue presents a question of fact, and defendants' motions for summary judgment should be denied. As one court explained,

> Defendants were required to inform Plaintiff that she had fifteen days to provide the Board with that certification. This they did not do. Defendants were also required to post notices relating to FMLA leave and to include specific information in their employee handbook informing employees of their 'entitlements and obligations' under the Act. This was not done either. Thus, even without considering the very real possibility that Plaintiff did, in fact, comply with the fifteen-day rule, it is clear that there are serious questions of fact relating to whether Defendants met their FMLA notice obligations to Plaintiff and, accordingly, whether they were permitted to follow through with Plaintiff's termination.

Marrero v. Camden County Bd. of Soc. Services, 164 F. Supp.2d 455, 466 (D. N.J. 2001) (citations omitted).

In the present case, Defendants did supply general information concerning the FMLA, and did not terminate Plaintiff's employment. Therefore, there are at least as serious questions of fact, and summary judgment is not appropriate.

**2. Issues of Law.**

In Henthorn v. Olsten Corp., 1999 WL 102764 (N.D. Ill. 1999), the court addressed the argument that an employee is relieved of her obligation when an employer does not advise her of any anticipated consequences of failing to provide medical certification. After considering both of the relevant C.F.R. sections, the court concluded as follows:

> Section 305(d) states that when an employer requests certification, it must also advise an employee of the anticipated consequences of a failure to provide adequate certification. It is true Dennehy's letter did not contain such a warning. However, section 305 is silent

> regarding any consequences from an employer's failure to include such information in its request for certification. To read such a penalty into the regulation could effectively nullify section 2613 of the FMLA, which authorizes an employer to require an employee with a serious health condition to supply the appropriate medical certification. 29 U.S.C. § 2613. It is well-settled that a regulation cannot nullify the statute it is interpreting. *See, e.g., Cox v. Autozone, Inc.*, 990 F.Supp. 1369, 1375-80 (M.D.Ala.1998) (FMLA regulation regarding notification of leave held invalid in light of conflict with statute); *Dormeyer v. Comerica Bank*, No. 96 C 4805, 1998 U.S. Dist. Lexis 16585, at *11-16 (N.D.Ill. Oct. 14, 1998) (FMLA regulation regarding employee's eligibility for leave if employer failed to properly notify invalid because it contradicted with clear language of statute) . . .
>
> In addition, Henthorn argues she was relieved of providing any medical certification because Olsten did not comply with other notice provisions in the FMLA regulations. Specifically, under section 301(b)(1), after an employee requests a leave of absence, an employer is to provide the employee with written notice "detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." . . .
>
> Even assuming this letter does not satisfy section 301(b), it does not follow that Henthorn is automatically relieved from providing the requested medical certification, particularly in light of Henthorn's admitted knowledge of this obligation. Section 301(f) states, "if an employer fails to provide notice in accordance with the provisions of this section, the employer may not take action against an employee for failure to comply with any provision required to set forth in the notice." 29 C.F.R. § 825.301(f). Dennehy's July 17 letter to Henthorn (via Havrilesko) clearly states Henthorn's obligation to provide adequate medical certification. Because the medical certification is the only provision Henthorn is alleged to have violated, and because Dennehy's letter informed Henthorn of this requirement, Olsten has satisfied section 301(b).

Id. at **4-5.

Hence, Defendants' alleged failure to inform Plaintiff of the anticipated consequence of her failing to supply adequate medical certification did not absolve Plaintiff of her certification

requirements, and does not entitle her to judgment as a matter of law. Section 301(f) provides the consequence to an employer of providing inadequate notice. In such a case, the employer "may not take action against an employee for failure to comply with any provision as set forth in the notice." In the present case, Drucker informed Plaintiff that without further certification, she would not qualify for FMLA leave. That consequence never took place, however, because Plaintiff resigned the same day. Consequently, there is a genuine issue of fact concerning whether Defendants took any action against Plaintiff for her failure to supply adequate medical certification.

In short, the legal consequences of Defendants' notice procedure can not be resolved without first resolving additional questions of fact. Thus, at this stage there are genuine issues of material fact, and Plaintiff is not entitled to judgment as a matter of law. As a result, summary judgment is not appropriate.

## III. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Constructive Discharge.

> A constructive discharge occurs when an employer renders the employee's working conditions intolerable, forcing the employee to quit. To constitute a constructive discharge, the employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit. The intent element is satisfied by a demonstration that quitting was a reasonably foreseeable consequence of the employer's discriminatory actions. The employee has an obligation to act reasonably by not assuming the worst and not jumping to conclusions to quickly.

Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1159 (8th Cir. 1999) (internal citations omitted). "An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." Summit v. S-B Power Tool, 121 F.3d 416,

421 (8th Cir. 1997).

"To prove that she was constructively discharged, a plaintiff must demonstrate that a reasonable person would find the working conditions intolerable. Such intolerability of working conditions is judged by an objective standard, not the plaintiff's subjective feelings." Phillips v. Taco Bell Corp., 156 F.3d 884, 890 (8th Cir. 1998) (internal citation omitted). "The question is whether working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative." Tatom v. Georgia-Pacific Corp., 228 F.3d 926, 932 (8th Cir. 2000).

**1. The Parties' Positions.**

Defendants assert that Plaintiff can not establish a prima facie case of constructive discharge. They state that Plaintiff's case is based on Drucker's single voicemail message, in which he informed Plaintiff that she would be "AWOL" if she did not return to work after 12 days. From these facts, Defendants contend that "no reasonable jury could find that Plaintiff's working conditions were intolerable."

In addition, Defendants argue that Plaintiff can not prove that resignation was her only plausible alternative. Defendants explain that the Department had previously approved Plaintiff's vacation request from July 1 through July 11, 1999, and yet she resigned on her second day of vacation. They state that "Plaintiff's abrupt resignation was unreasonable and premature." Defendants stress that Plaintiff never attempted to contact Drucker or any other Department employees to provide them with an opportunity to resolve the situation prior to her resignation. They further state "Plaintiff could have also attempted to secure appropriate certification over the next several days." Instead, according to Defendants, Plaintiff is attempting

to shift the burden to them by arguing that the Department was obligated to resolve the problem after she resigned. Defendants maintain that this is a misinterpretation of the law. Quoting West v. Marion Merrell Dow, Inc., 54 F.3d 493, 498 (8th Cir. 1995), Defendants explain that "[a]n employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged." Accordingly, Defendants conclude that Plaintiff's claim should be dismissed.

Plaintiff responds that whether she was constructively discharged is a question of fact, which precludes summary judgment. She explains that Defendants' violation of her FMLA rights provides an underlying illegality. Plaintiff asserts that,

> By denying Docken her FMLA leave in order to care for her father, defendants were forcing her to choose between her family and her livelihood. . . . A jury will find that it was reasonable for Docken to resign, and may even find that under the circumstances, it would be unreasonable for her not to resign. Had she not resigned, defendants would have fired her. Rather than having a tarnished employment record with the State, and perhaps having difficulty finding future employment, Docken chose to resign.

Therefore, Plaintiff maintains that she foreseeably resigned because she felt the need to care for her father.

Plaintiff also argues that the suddenness of her resignation does not preclude a constructive discharge claim. She argues that Drucker was the individual responsible for granting or denying FMLA leave. Therefore, discussing his voicemail message with others in the Department would not have changed the effect of his decision. In addition, Plaintiff emphasizes that Defendants had the burden of ensuring she was provided with proper documentation of her rights and obligations under the FMLA. Finally, Plaintiff notes that she

requested that her resignation be effective July 12, 1999, but Defendants rejected this proposal and informed her that the resignation was effective immediately.

**2. The Court's Recommendation.**

The Court recommends denying Defendants' motion. The Court is not persuaded by Plaintiff's argument that a constructive discharge claim is automatically unfit for summary judgment simply because it involves a reasonable person standard. It is true that Minnesota courts have stated "[w]hether employment conditions are in fact intolerable is a question of fact judged by a reasonable-person standard." Navarre v. South Washington County Schools, 633 N.W.2d 40, 57 (Minn. Ct. App. 2001). And this statement clearly implies the issue is inappropriate for summary judgment. But the Eight Circuit has stated,

> In a variety of cases, this Court has held that such things as loss of supervisory responsibilities, a feeling of being unfairly criticized, dissatisfaction with work assignments, and loss of pay are insufficient to constitute a constructive discharge. *See Spears*, 210 F.3d at 855; (criticism, reprimand, and the denial of a transfer request did not make conditions intolerable); *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1160 (8th Cir.1999) (feeling of being unfairly criticized); *Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 575 (8th Cir.1997) (special scrutiny and criticism of employee's conduct); *Allen*, 81 F.3d at 796 (suspension for three days without pay due to an alleged customer complaint, and plaintiff's being told that if he were not pleased with the denial of his transfer request he could quit or become a floater).

Tatom, 228 F.3d at 932. And the Eight Circuit has also stated that "an employee's being told that he or she will be fired for cause does not, in and of itself, constitute constructive discharge." Summit, 121 F.3d at 421. Therefore, not every constructive discharge claim should reach a jury.

The Court acknowledges that Plaintiff does not have a particularly strong case. She concedes that Drucker did inform her of what further medical certification was necessary. As a

result, it may be exceedingly difficult to convince a jury that a reasonable person in her situation would find no alternative to resigning. But this weakness does not justify summary judgment for Defendants.

In the present case Plaintiff was faced with a more intolerable work situation than those Eighth Circuit cases listed above, in which summary judgment was granted. Drucker informed Plaintiff that she would be "AWOL" if she did not provide medical certification for her father. And he did not inform her that she had at least 15 days in which to do so. Because Plaintiff was not adequately informed of her opportunity to fix the situation, her resignation could be a reasonably foreseeable consequence of Drucker's actions.

Further, the present case can be distinguished from Summit, in which the Eighth Circuit explained that "an employee's being told that he or she will be fired for cause does not, in and of itself, constitute constructive discharge." 121 F.3d at 421. The Court in Summit went on to explain that "[i]t is clear that it was not her working conditions that 'forced' plaintiff to resign, but rather being informed that she was being terminated from her employment." Id.

In the present case, Plaintiff was being informed she would be "AWOL,"without further medical certification. But as was explained earlier in this Report and Recommendation, an employer who fails to provide adequate notice, "may not take action against an employee for failure to comply with any provision as set forth in the notice." See 29 C.F.R. § 825.301(f). Therefore, Defendants would not have been entitled to discharge Plaintiff for cause. Moreover, it was not simply the announcement that she would be "AWOL," that led to her resignation. Plaintiff was also denied useful information regarding how to avoid this penalty. Thus, she can argue that it was her working conditions that "forced" her to resign. Therefore, there are genuine

issues of material fact which preclude summary judgment. As a result, the Court recommends denying Defendants' motion with respect to Plaintiff's constructive discharge claim.

**B. Negligent Infliction of Emotional Distress.**

"To establish a claim for negligent infliction of emotional distress, plaintiff must show she: (1) was within a zone of danger of physical impact; (2) reasonably feared for her own safety; and (3) suffered severe emotional distress with attendant physical manifestations." K.A.C. v. Benson, 527 N.W.2d 553, 557 (Minn. 1995).

"Minnesota recognizes an exception to the 'zone of danger' requirement where a plaintiff has suffered mental anguish resulting from a direct invasion of rights, such as when one is defamed." Wallin v. Minnesota Dep't of Corr., 598 N.W.2d 393, 405 (Minn. Ct. App. 1999); Burns v. City of Minneapolis, 2001 WL 1589619 (D. Minn. 2001). "[A]s in other negligence actions, emotional distress damages are available in limited circumstances. There must be a direct violation of the plaintiff's rights by willful, wanton or malicious conduct; mere negligence is not sufficient." Lickteig v. Alderson, Ondov, Leonard & Sween, P.A., 556 N.W.2d 557, 562 (Minn. 1996).

**1. The Parties' Positions.**

Defendants assert that Plaintiff can not make a claim for negligent infliction of emotional distress. They state that Plaintiff's claim is based on Drucker's voicemail message informing Plaintiff that her doctor's letter did not meet FMLA requirements, and that she would be considered "AWOL" after her vacation. Defendants explain that Drucker used no profanity, and the voicemail message was not otherwise abusive. In addition, there was never a face to face confrontation in which a person might have felt threatened. At the time he left the voicemail

message, Drucker also believed Plaintiff was no longer in the state. Defendants contend that this single voicemail message can not constitute willful, wanton, or malicious conduct. Citing Prosser and Keaton on Torts, 214 (5th ed. 1984), they state that "it was impossible for Drucker to believe that his voicemail message – even if his message constituted 'highly unreasonable conduct' – would pose an unreasonable risk of danger to Plaintiff."

Defendants also assert that the Plaintiff does not successfully state a claim for negligent infliction of emotional distress simply because she has a claim for violation of the FMLA.[2] They state that Minnesota courts have not held that the mere existence of an underlying claim precludes summary judgment on an emotional distress claim. Therefore, Defendants argue that they need not move for summary judgment on the FMLA claim in order to have the negligent infliction of emotional distress claim dismissed. Moreover, Defendants explain that there are no cases in which Minnesota courts have treated a negligent infliction of emotional distress claim as a parasitic tort to an FMLA claim.

Plaintiff responds that Defendants' motion should be denied. She details the basis behind the exception to the "zone of danger" requirement. Accordingly, she states that she is alleging a direct invasion of her statutory rights under the FMLA. Plaintiff then concludes "because defendants have not moved for summary judgment on this claim [the FMLA violation], its motion for summary judgment on Docken's negligent infliction claim is therefore improper."

---

[2]In their original memorandum, Defendants argued that the negligent infliction of emotional distress claim could not survive if Plaintiff's constructive discharge claim was dismissed. In her response, Plaintiff argued that it is the FMLA violation that underlies her claim for emotional distress. In their reply, Defendants chose not to repeat their constructive discharge argument, and instead addressed the argument that the FMLA violation is the basis for the emotional distress claim.

### 2. The Court's Recommendation.

The Court recommends granting Defendants' motion. Plaintiff's negligent infliction of emotional distress claim is based on the "zone of danger" exception. Plaintiff states that she only needs to show a direct invasion of rights, and not a willful invasion. She cites Bohdan v. Alltool Mfg. Co., 411 N.W.2d 902 (Minn. Ct. App. 1987) for this proposition. While the Court questions this interpretation of Bohdan, that issue is not relevant. The Minnesota Supreme Court stated clearly in Lickteig that there must be "a direct violation of the plaintiff's rights by willful, wanton or malicious conduct; mere negligence is not sufficient." 556 N.W.2d at 562. Therefore, Lickteig is controlling law on this claim.

As the following quotation should illustrate, Drucker's behavior does not qualify as willful, wanton, or malicious.

> The Minnesota definition of "gross negligence" is "negligence of the highest degree." *High v. Supreme Lodge of the World*, 214 Minn. 164, 170, 7 N.W.2d 675, 679 (1943). A further explanation of "gross negligence" is given in *State v. Bolsinger*, 221 Minn. 154, 21 N.W.2d 480 (1946), where construction of a Minnesota criminal vehicular homicide statute which used alternative standards of recklessness or gross negligence was given. *Bolsinger* drew on the law of Massachusetts as the leading jurisdiction for development of the concept of gross negligence.
>
> > In the leading case of *Altman v. Aronson*, 231 Mass. 588, 591, 121 N.E. 505, 506, 4 A.L.R. 1185, where "gross negligence" is defined as very great negligence or absence of even slight care, but as not equivalent to wanton and willful wrong, the court said:
> > "Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. * * * But it is something less than the willful, wanton,

> and reckless conduct which renders a defendant who has injured another liable to the latter even though guilty of contributory negligence, or which renders a defendant in rightful possession of real estate liable to a trespasser whom he has injured."
>
> *Id.* at 159 N.W.2d at 485

Ackerman v. American Family Mut. Ins. Co., 435 N.W.2d 835, 840 (Minn. Ct. App. 1989).

In her FMLA claim, Plaintiff states that Drucker violated her FMLA rights by not providing adequate written notice of her rights and obligations. Specifically, Plaintiff claims that Drucker left a caustic message in which he failed to inform her that she had at least 15 days to obtain adequate medical certification. But Drucker did inform Plaintiff that a letter from her father's doctor would entitle her to FMLA leave. His error was failing to inform her that she had at least 15 days in which to get the letter. The Court can not conclude that he acted with the absence of even slight care. Therefore, there is a question concerning whether Drucker's conduct was even grossly negligent, which as illustrated in Bolsinger, is still a level below willful, wanton, and reckless. Even when viewing the facts in the light most favorable to Plaintiff, the Court can not conclude that this behavior rises to willful, wanton, or malicious conduct. Consequently, the Court recommends granting Defendants' motion with respect to Plaintiff's negligent infliction of emotional distress claim.

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

(1) Plaintiff's Motion for Summary Judgment on Count I of her Complaint (Doc. No. 11) be **DENIED;**

(2) Defendants' Motion for Partial Summary Judgment Dismissing Plaintiff's Constructive Discharge and Negligent Infliction of Emotional Distress Claims (Doc. No. 20) be **DENIED** with respect to Plaintiff's constructive discharge claim, and **GRANTED** with respect to Plaintiff's negligent infliction of emotional distress claim.

Dated: August 13, 2002.

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by August 27, 2002, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.